1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7    CINDY E.,

8                                  Plaintiff,          CASE NO. C18-5362-RSM-MAT

9          v.

10   NANCY A. BERRYHILL, Deputy          REPORT AND RECOMMENDATION
     Commissioner of Social Security for  RE: SOCIAL SECURITY DISABILITY
11   Operations,                          APPEAL

12                                  Defendant.

13

14          Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of

15   the Social Security Administration (Commissioner).    The Commissioner denied applications for

16   Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing

17   before an Administrative Law Judge (ALJ).    Having considered the decision, the administrative

18   record (AR), and all memoranda, the Court recommends this matter be AFFIRMED.

19                          **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1969.[1]   She completed high school and obtained two-year

21   certificates/degrees in word processing and early childhood education.  (AR 86-87, 345.)   She

22

23          [1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

REPORT AND RECOMMENDATION
PAGE - 1

1    previously worked as an insurance clerk and claims clerk.  (AR 3343.)

2        Plaintiff protectively filed DIB and SSI applications on September 2, 2011, alleging

3    disability beginning June 5, 2009. (AR 275-92.)  The applications were denied at the initial level

4    and on reconsideration.  She filed another SSI application in December 2012.  (AR 304-13.)

5        On February 4, 2014, ALJ Michael Gilbert held a hearing, taking testimony from plaintiff

6    and a vocational expert (VE).  (AR 62-134.)  On June 26, 2014, the ALJ issued a decision finding

7    plaintiff not disabled.  (AR 3409-32.) Plaintiff timely appealed.   The Appeals Council denied

8    plaintiff's request for review on December 11, 2015 (AR 3452-57), making the ALJ's decision the

9    final decision of the Commissioner.  Plaintiff appealed to this Court.

10       In an order dated August 15, 2016, the Court reversed and remanded the case for further

11   administrative proceedings.  (AR 3459-68.)  The parties agreed the matter should be remanded,

12   but not as to all alleged errors or as to the nature of the remand.  (AR 3461-62.)  In considering the

13   proper type of remand, the Court first found the ALJ failed to provide legally sufficient reasons

14   for rejecting challenged medical opinion evidence and plaintiff's testimony.  (AR 3465.) It found

15   further administrative proceedings would be useful to resolve factual issues relating to plaintiff's

16   medical appointments.   (AR 3465-66.)   The Court further found that crediting improperly

17   discredited evidence did not compel a finding of disability given the existence of many non-

18   disputed medical opinions from treating, examining, and reviewing sources supporting the ALJ's

19   finding of non-disability.  (AR 3466.)  The Court also rejected plaintiff's allegation of bias by the

20   ALJ.  (AR 3467-68.)  On remand, the Appeals Council found additional issues required further

21   consideration, including, but not limited to, the proper adjudicative periods for plaintiff's DIB and

22   SSI claims given the existence of final decisions on prior applications for benefits.  (AR 3476-80.)

23       The ALJ held a second hearing on February 7, 2017, taking testimony from plaintiff and a

REPORT AND RECOMMENDATION
PAGE - 2

1  VE.  (AR 3371-3405.)  In a decision dated August 1, 2017, the ALJ again found plaintiff not

2  disabled.  (AR 3317-45.)  As directed by the Appeals Council, the ALJ clarified that the

3  adjudicative periods for plaintiff's claims was from November 30, 2010 through December 21,

4  2014 for DIB, and from December 21, 2012 through August 1, 2017 for SSI.  (AR 3317-18.)  The

5  ALJ therefore referred to November 30, 2010 as the amended alleged onset date and December

6  21, 2012 as the filing date.  The Appeals Council found no reason to assume jurisdiction (AR

7  3307-13), and plaintiff appealed the final August 2017 ALJ decision to this Court.  *See* 20 C.F.R.

8  §§ 404.984, 416.1484.

### JURISDICTION

10  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

### DISCUSSION

12  The Commissioner follows a five-step sequential evaluation process for determining

13  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

14  be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

15  engaged in substantial gainful activity since the alleged onset date.  At step two, it must be

16  determined whether a claimant suffers from a severe impairment.  The ALJ found the following

17  impairments severe:  morbid obesity;  bilateral wrist tenosynovitis/history of carpal tunnel

18  syndrome status post bilateral release/bilateral enthesopathy of the wrists; very mild to mild ulnar

19  neuropathy at the right elbow and bilateral elbows; osteoarthritis/degenerative joint disease (DJD)

20  of bilateral knees; sleep apnea; cervical spine strain and degenerative disc disease (DDD); and

21  fibromyalgia/chronic pain syndrome.  Step three asks whether a claimant's impairments meet or

22  equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria

23  of a listed impairment.

REPORT AND RECOMMENDATION
PAGE - 3

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform light work, including the ability to lift/carry twenty pounds occasionally and ten pounds frequently and sit/stand/walk for six out of eight hours, but with the following exceptions:  can perform postural activities (i.e., climb ramps and stairs, balance, stoop, kneel, crouch, and crawl) on occasional basis except for no climbing ladders, ropes, or scaffolds; can frequently handle, finger, and feel bilaterally; can have occasional exposure to excess vibration; can have occasional exposure to atmospherics as defined by the Dictionary of Occupational Titles (DOT); and can have frequent exposure to workplace hazards, but no exposure to unprotected heights.  With that assessment, the ALJ found plaintiff able to perform her past relevant work of insurance clerk and claims clerk, both of which are sedentary positions.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as housekeeping and price marker.  The ALJ also noted the VE's testimony that plaintiff could perform those light jobs if she were further limited by mental health as to memory, social, and cognitive functioning; that, if she were limited to sedentary work, she could perform jobs such as document preparer and final assembler; and that the sedentary final assembler position also accommodates the same mental limitations.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a

REPORT AND RECOMMENDATION
PAGE - 4

whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.")  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in failing to consider the vocational impact of her absenteeism due to medical appointments, and in assessing the opinions of three treating providers, her symptom testimony, and lay witness testimony.  She requests remand for an award of benefits or, in the alternative, for further administrative proceedings.  The Commissioner argues that the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Absenteeism</u>

At the 2014 hearing, plaintiff testified her biggest obstacle to returning to work is the time off she needs for treatment.  (AR 92.)  She had been seeing her chiropractor, Matthew Martinez, DC, two-to-four times a week for the past three years and, at the time of the hearing, had two standing weekday appointments with Martinez at 9:00 a.m.  (AR 93-94.)  She also saw her pain doctor once a month and primary care once a month.  (AR 98-100.)  Plaintiff argued the ALJ failed to consider the vocational impact of her absenteeism due to medical appointments "(480 over a 3½ year period)."  (AR 3461.)

This Court found plaintiff's absenteeism argument to reflect an outstanding issue necessitating further administrative proceedings, and therefore precluding an award of benefits.

REPORT AND RECOMMENDATION
PAGE - 5

1    The Court stated:

2        Even accepting[, as plaintiff alleged,] that all the appointments were
         necessary and were related to her severe impairments, this claim
3        raises factual issues that must be resolved before benefits could be
         awarded on this basis. These issues include, for example, the need
4        to schedule all appointments during the workweek or workday, the
         need to miss an entire workday for each appointment, and whether
5        the need for this number of appointments is ongoing.

6    (AR 3466.) Further administrative proceedings were needed to resolve these factual issues.

7        The order from the Appeals Council addressed the issue as follows:

8        Social Security Ruling [(SSR)] 96-8p clarifies that limitations
         reflected in a [RFC] assessment must arise from medically
9        determinable impairments, including any limitations in function
         arising from treatment. On remand, the decision must determine
10       whether the record provides sufficient bases to conclude that the
         claimant's frequency of treatment during the period at issue was at
11       least reasonably necessary for treatment of her impairments, which
         will require analyses of the objective evidence, such as examination
12       results, and the reliability [of] claimant's allegations regarding her
         symptoms and limitations (20 CFR 404.1529 and 416.929; [SSR]
13       16-3p).

14   (AR 3477-78.) If the ALJ concluded plaintiff's impairments resulted in work absences, such

15   absences were to be identified in the RFC, an assessment that reflects the most a claimant can do

16   despite their impairments over the course of a normal workweek or its equivalent. (AR 3478

17   (citing SSR 96-8p).)

18       At the 2017 hearing, plaintiff testified her pain had increased since the last hearing because

19   she had not been able to see her chiropractor, who had retired, and the treatment was not covered

20   by her insurance. (AR 3377.) She had one medical appointment a month for pain management,

21   and sometimes a second appointment relating to "possible seizures[.]" (AR 3380-81.) Whenever

22   she went to a doctor, chiropractor, or physical therapist, it had been recommended by a doctor.

23   (AR 3384.) Plaintiff offered specific testimony that some of her providers, such as her first

REPORT AND RECOMMENDATION
PAGE - 6

chiropractor, an occupational therapist, a massage therapist, one treating provider, one pain specialist, and two doctors who administered injections, did not offer office hours outside of regular working hours.  (AR 3385-87, 3392.)  Also, she could not have returned to work on the same day she saw a psychotherapist given the emotional drain and stress.  (AR 3390.)  Although discussing other providers, including someone who performed energy work, Dr. Martinez, other pain doctors, another doctor who administered injections, a mental health provider, a doctor she saw for sleep apnea, other physicians, and physical therapists, she was not asked and did not provide testimony relating to office hours.  (AR 3387-95.)

The ALJ asked plaintiff:  "At any of these places have you ever talked to them about attending an appointment outside of normal working hours or do you just base that upon the hours of the place?"  (AR 3392.)  Plaintiff at first answered:  "Well if they offered hours outside of the normal time they would let people know.  These are just general doctors that, you know . . . ."  (*Id.*)  When asked again, plaintiff conceded she had never asked.  The VE testified missing up to eight hours a month, including two-to-three medical appointments a month comprising a total of eight hours, would be acceptable with advance notice of appointments.  (AR 3401-03.)

In the 2017 decision, the ALJ noted plaintiff's testimony regarding medical appointments and his finding that plaintiff's alleged seizure condition was not a medically determinable impairment.  (AR 3325.)  The ALJ found the record did not support plaintiff's allegations as to symptom severity and degree of functional impairment.  He provided a detailed discussion of the extensive medical record and the numerous opinions from medical providers, examiners, and non-examining sources.  (AR 3325-43.)   With regard to absenteeism, the ALJ concluded:

> The claimant has made much of her multiple appointments as being
> a barrier to working and the Appeals Council ordered on remand to
> examine this issue.  However, doctor appointments would not

REPORT AND RECOMMENDATION
PAGE - 7

prevent her from sustaining fulltime employment. There is no evidence that the claimant cannot get her hours adjusted or take leave to accommodate appointments. There is no evidence that the providers cannot accommodate her hours to give appointments when she is not working as she admitted in her testimony that she never even asked. There is no evidence that the frequency of treatment is required/medically necessary and that it would eliminate work. In fact, the claimant testified that she goes to medical appointments about once per month for pain management and can go up to twice per month if she has to be seen for an alleged seizure condition, but this is not a medically determinable impairment. Therefore, maybe once per month for pain management but even that seems unnecessary given that she has reported her pain is under good control with her current regimen. Moreover, these are scheduled appointments, not unapproved, no shows at work.

(AR 3335.)

Plaintiff again argues the ALJ erred in considering the vocational impact of her absenteeism. She points to her testimony at hearing and her history of numerous medical appointments, which she averages at eight a month since her original June 5, 2009 alleged onset date.[2] She contends the ALJ's assumption her medical providers would see her outside their regular office hours on a regular basis is unreasonable and unsupported. She denies any evidence from the VE an employee could adjust hours or take leave to accommodate appointments, or that such accommodation would allow for a finding of non-disability. Plaintiff rejects the ALJ's "bald assertion" as to a lack of support for her medically necessary treatment. (Dkt. 10 at 5.) She asserts no further proceedings are necessary, and that this matter should be remanded for an award of benefits based on the existing record.

---

[2] Plaintiff states she attended more than 680 medical visits to treat and evaluate her impairments, and submitted a seventeen-page attachment to her opening brief outlining the appointments since her original alleged onset date. (Dkt. 10-1.)

REPORT AND RECOMMENDATION
PAGE - 8

In assessing a claimant's RFC, an ALJ properly focuses on the functional limitations and restrictions resulting from medically determinable impairments, not the frequency of a claimant's medical appointments. *Goodman v. Berryhill*, C17-5115-BAT, 2017 U.S. Dist. LEXIS 157691 at *5-8 (W.D. Wash. Sep. 25, 2017) (citing SSR 96-8p and *Cherkaoui v. Commissioner of Social Security*, No. 16-11472, 2017 U.S. App. LEXIS 1828 at *4 (11th Cir. Feb. 2, 2017) ("[W]e are unpersuaded by [claimant's] argument that the excessive number of medical appointments she attended rendered her disabled. For starters, whether the number of medical appointments affects her ability to work is not an appropriate consideration for assessing her [RFC] because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments. The number of medical appointments she attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities. Moreover, nothing in the record indicates that [claimant] was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work.") (internal citation omitted); *Razo v. Colvin*, No. 15-1495, 2016 U.S. App. LEXIS 19070 at *14-15 (10th Cir. Oct. 21, 2016) (rejecting claimant's argument he was precluded from work because his physician noted he would need to miss work at least three times per month following surgery: "Even if this were necessary following surgery, it does not mean [claimant] would be required to attend follow-up appointments indefinitely, nor does it mean he could not perform work on a regular and continuing basis. To be able to perform work on a 'regular and continuing basis,' one need not keep a particular work schedule. Rather, work 'on a regular and continuing basis . . . means 8 hours a day, for 5 days a week, or an equivalent work schedule.'") (quoted sources omitted). As previously found by this Court:

> Accepting [the proposition that the frequency of medical

REPORT AND RECOMMENDATION
PAGE - 9

1

> appointments reflects the existence of a disabling impairment]
> would presume disability for anyone who frequently visited a doctor
> regardless of the necessity of the treatment or the medical prognosis.
> . . . This is not to say that frequency of medical treatment is
> irrelevant; rather, it means that to be disabling, the frequency of
> medical treatment must be necessitated by the medical condition and
> be substantiated by the evidence.

*Goodman*, 2017 U.S. Dist. LEXIS 157691 at *7-9 (no physician opined claimant would frequently miss work due to medical appointments, nothing suggested he could not have scheduled his appointments outside of working hours, and the content of the records and the claimant's own testimony contradicted the assertion the frequency of appointments was necessitated by debilitating impairments).

The ALJ is, moreover, "responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). *Accord Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Thomas*, 278 F.3d at 956-57. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ in this case properly considered the evidence of functional limitations and restrictions resulting from medically determinable impairments. The ALJ complied with the Court's remand order by considering pertinent factual issues, including evidence associated with whether plaintiff's appointments were medically necessary, could only take place during the workweek or workday, and were still occurring with the same frequency.

The medical evidence and hearing testimony support the ALJ's conclusion that plaintiff's

REPORT AND RECOMMENDATION
PAGE - 10

1  medically necessary appointments would not interfere with her ability to perform work on a regular

2  and continuing basis.  Plaintiff offers no more than a conclusory assertion her numerous medical

3  appointments were medically necessary.  She does not undermine the substantial evidence support

4  for the ALJ's rational interpretation of the record.  Plaintiff conceded she had not inquired into

5  whether her appointments could have taken place outside of regular business or work hours, and

6  her assumption such scheduling was not possible lacks support.  It is not, for example, necessarily

7  clear that chiropractic adjustments, physical therapy, massage therapy, energy healing, overnight

8  sleep studies, and services received through medical clinics could only occur during regular

9  business hours and/or during plaintiff's possible working hours.  Nor is there evidence supporting

10  a conclusion plaintiff would be unable to adjust her hours or take leave to accommodate medically

11  necessary treatment in pre-approved absences.

12      Plaintiff in large part relies on the sheer number of her appointments over the years, a

13  significant portion of which took place prior to the adjudicative periods at issue.  (*See* Dkt. 10-1.)

14  Because the ALJ properly complied with the directive of the Court, and because his interpretation

15  of the evidence is rational and supported, plaintiff's assignment of error fails.

16                          Medical Opinions

17      Plaintiff previously averred error in the ALJ's consideration of opinions offered by treating

18  doctors Richard Faiola, M.D., and Kristi Breen, Ph.D. and by Dr. Martinez.  The Court found the

19  ALJ failed to provide legally sufficient reasons for rejecting the challenged opinion evidence, but

20  did not discuss the opinions or errors.  (AR 3465-66.)  The Appeals Council directed the ALJ to

21  weigh the medical opinion of Dr. Faiola, "which may refer to statements in 2009 to early 2010 (Tr.

22  1827, 1834, 1883)", Dr. Breen's October 2010 opinion (AR 1517), and a January 2014 opinion of

23  Dr. Martinez (AR 3275).  Plaintiff again alleges error in relation to these treating providers.

REPORT AND RECOMMENDATION
PAGE - 11

As a general matter, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Because the record in this case contained contradictory opinions from physicians and psychologists, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence, for rejecting the opinion of a treating or examining doctor. *Id*. at 830-31. The ALJ could assign less weight to the opinion of an "other source," such as a chiropractor, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996) and SSR 06-3p,[3] and could discount such opinions with reasons germane to the source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A.    Richard Faiola, M.D.

Dr. Faiola served as plaintiff's treating primary care physician at the time she stopped working. In early June 2009, Dr. Faiola stated plaintiff would be unable to perform her regular work duties due to her need to rest her wrist and hands. (AR 1827.) In January 2010, Dr. Faiola noted plaintiff had not been released back to work, and that she had tried and failed a trial return to normal, light tasks, but "acknowledged she can not return to that kind of work." (AR 1834.) Dr. Faiola stated: "There is not much of anything more to do. We have no further medical intervention, but she is unable to return to work." (AR 1834.) Dr. Faiola also, in a February 2010 response to a request from the Washington State Department of Labor and Industries (L&I), stated: "I have no objective evidence. I have said I have no objective evidence. I doubt such objective

---

[3] The Social Security Administration (SSA) rescinded SSR 06-3p effective March 27, 2017, but it still applies to applications filed before that date. 82 Fed. Reg. 15263, 15263 (March 27, 2017). New regulations giving rise to the rescission, and applicable to claims filed after March 27, 2017, include additional medical practitioners as "acceptable medical sources," such as advanced practice registered nurses, audiologists, and physician assistants, and identify all other licensed healthcare workers, such as chiropractors, as "medical sources." 20 C.F.R. §§ 404.1502(a), (d), 416.902(a), (d).

evidence will develop.  She still says she hurts.  I believe she hurts.  Her pain precludes her working.  No, I can not explain everything.  That does not mean it is not real."  (AR 1883; *see also* AR 1095.)

The ALJ noted Dr. Faiola's opinion plaintiff's pain precluded her from working, but that he could not explain why.  (AR 3335.)  "In fact, he said he had no objective evidence."  (*Id.*)  The ALJ also pointed to a March 2009 form on which Dr. Faiola had released plaintiff to her job of injury with no restrictions indicated.  (*See* AR 1884.)  "However, he did note that an upcoming nerve conduction study would likely confirm bilateral carpal tunnel syndrome but that did not happen."  (AR 3335.)  The ALJ concluded:  "The opinion of Dr. Faiola is all over the place and is given little weight."  (*Id.*)

Plaintiff rejects the ALJ's interpretation of the evidence from Dr. Faiola, stating the March 2009 opinion came during a time when she was still trying to work and did not claim disability, and that Dr. Faiola's subsequent opinion shows her condition got worse.  She argues that, given Dr. Faiola's ability to make clinical observations during treatment, the ALJ improperly second-guessed his opinions as relying on her subjective complaints.  *See Ryan v. Commissioner*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (". . . ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations.")

While the ALJ could have better stated his explanation for assigning little weight to the evidence from Dr. Faiola, the Court finds no error.  The ALJ bears the responsibility for assessing a claimant's symptom reporting.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the

REPORT AND RECOMMENDATION
PAGE - 13

testimony, and resolve ambiguities in the record."); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("'[Q]uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'") (quoted source omitted).  As discussed below, the ALJ provided sufficient reasons for rejecting plaintiff's symptom reporting.  The ALJ also properly considered that Dr. Faiola explicitly based his opinion on plaintiff's self-reported pain, rather than on any objective evidence.  *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("[T]he treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements."). *Cf. Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ may reject treating provider's opinions if based "to a large extent" on discredited self-reports and not clinical evidence; "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.")  While maintaining Dr. Faiola rendered his opinion based on his own clinical observations, plaintiff does not identify any such observations or demonstrate the ALJ failed to rationally interpret the explanation Dr. Faiola provided for his opinion.

Nor did the ALJ err in considering that Dr. Faiola had earlier released plaintiff to work. As the ALJ noted, Dr. Faiola's belief bilateral carpal tunnel syndrome would be confirmed in an upcoming nerve conduction study was not borne out.  (AR 1119-25 (April 17, 2009 normal nerve conduction study, finding no evidence of entrapment neuropathy of the ulnar nerve or median nerve and no evidence of a radiculopathy or peripheral neuropathy).)  The decision reflects the ALJ's reasonable consideration of the fact that, despite the continued absence of any objective findings, Dr. Faiola later found plaintiff unable to work.

REPORT AND RECOMMENDATION
PAGE - 14

In addition, given the November 30, 2010 amended alleged onset date, the evidence from Dr. Faiola falls outside the adjudicative period. The record also contains contradictory findings and opinions, dated within the relevant time period, from multiple examining physicians, from treating physicians Drs. Edward Posuniak and Irfan Ansari, and from non-examining physicians. (*See* AR 3335-38.) Accordingly, even if it could be said the ALJ erred in considering the opinion of Dr. Faiola, such error would be harmless. *See Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (cited sources omitted).

B.    Matthew Martinez, D.C.

Dr. Martinez provided plaintiff with chiropractic treatment beginning in 2011. In letters dated January 28, 2014 and February 8, 2017, Dr. Martinez noted his treatment of plaintiff's degenerative disc diseases, scoliosis, carpal tunnel, knee arthrosis, and spondylosis, and opined: "It is reasonable and responsible to diagnose [plaintiff] as disabled according to the WA state law, her combined injuries would make it impossible for [her] to work and maintain in a work environment." (AR 3275, 4531.)

The ALJ gave the January 2014 opinion little weight. He found the opinion inconsistent with the medical evidence of record, which showed mild to moderate physical impairments at most and complaints inconsistent with the objective evidence. (AR 3338.) Plaintiff's "main complaint is her hands, for which there is the least supporting evidence." (*Id*.) The ALJ found the opinion of Dr. Martinez conclusory and lacking citation to any supportive evidence. He also found the opinion to express a legal conclusion, not a medical condition. That is, while doctors were qualified to express an expert opinion about physical or mental limitations caused by impairments,

1  a conclusion as to whether or not a claimant is disabled is a legal conclusion reserved to the

2  Commissioner.  (*Id*. (citing SSR 96-5p).)[4]

3  　　The ALJ likewise accorded little weight to the identical February 2017 opinion.  He found

4  the opinion conclusory, "as Dr. Martinez did not cite to one shred of evidence to support his

5  opinion and the overall objective evidence and clinical findings in the record are inconsistent with

6  this opinion and his treatment records."  (*Id*.)  He further stated:  "The conclusion is that either the

7  claimant exaggerated symptoms to Dr. Martinez or Dr. Martinez is not an objective medical

8  source."  (*Id*.)  Although a treating provider, "his opinion is out of proportion with [the] mainly

9  benign longitudinal medical record."  (*Id*.)

10  　　Plaintiff rejects the contention Dr. Martinez was required to cite to any evidence, and points

11  to the clinical observations in their more than 240 appointments as the basis for the opinion of

12  disability.  She denies inconsistency with the medical record, asserting consistency with both her

13  severe medical conditions causing pain and her severe pain disorder, as well as with the numerous

14  treatment modalities employed.   She disputes the ALJ's suggestion she either exaggerated her

15  symptoms or Dr. Martinez was not objective, contending this conjecture merely recognizes she

16  meets the criteria of her severe pain disorder.  Plaintiff, finally, rejects the ALJ's depiction of the

17  opinion as conclusory, asserting Dr. Martinez properly provided an assessment based on his

18  clinical observations, and citing *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012), in support.

19  　　The Court finds the ALJ provided the required germane reasons for discounting the opinion

20  of Dr. Martinez.  An ALJ properly considers the evidence presented and explanations provided in

21  _____

22  　　[4] Plaintiff contends the ALJ did not, in 2017, raise this as a reason for rejecting the opinions of Dr.
Martinez, and that the Commissioner's argument on this point is both a violation of the law of the case and
a prohibited *post hoc* rationalization.  (Dkt. 15 at 4-5.)  The ALJ did, however, include this reasoning in the

23  2017 decision.  (AR 3338.)

REPORT AND RECOMMENDATION
PAGE - 16

support of a medical opinion.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.")  An ALJ may reject an opinion that is inadequately supported or explained, brief, conclusory, and/or inconsistent with the record.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); and *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999).  An ALJ further need not provide reasons to reject a physician's statement when the statement does not assess any limitations.  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010).  In addition, the question of whether a claimant is disabled or unable to work is an issue reserved to the Commissioner, and an opinion on such issues is not entitled to any special significance.  20 C.F.R. §§ 404.1527 (d), 416.927(d).  *See also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir 2010) ("A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one. An impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity. . . .  The law reserves the disability determination to the Commissioner.")

Dr. Martinez offered conclusory opinions on an issue reserved to the Commissioner, unaccompanied by reference to any supportive findings, explanations, or the identification of any specific functional limitations.  Neither the mere existence of severe impairments, nor the evidence

REPORT AND RECOMMENDATION
PAGE - 17

1   of plaintiff's treatment demonstrates the ALJ failed to rationally interpret the record as inconsistent

2   with the opinions of Dr. Martinez.  The decision in *Hill* is inapposite.  In that case, the Court

3   rejected the argument an ALJ's failure to acknowledge the opinion of a physician constituted

4   harmless error because the opinion was conclusory and rested on an issue reserved to the

5   Commissioner.  *Hill*, 698 F.3d at 1160.  The ALJ did not ignore the evidence from Dr. Martinez.

6   He provided several germane reasons.

7       An ALJ is also "entitled to draw inferences logically flowing from the evidence."  *Sample*

8   *v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  The Court is not persuaded by the ALJ's

9   conclusion the opinion from Dr. Martinez must have resulted from either symptom exaggeration

10  or an absence of objectivity.  As plaintiff observes, this inference fails to adequately account for

11  her severe pain disorder, a condition for which Dr. Martinez did not provide treatment.  The ALJ,

12  however, followed up this statement with the conclusion that Dr. Martinez offered an opinion out

13  of proportion with the mainly benign evidence in the longitudinal record.  (AR 3338.)  He also

14  provided the above-described germane and persuasive reasons for discounting the opinion of Dr.

15  Martinez.  The Court therefore finds the single error in the ALJ's consideration of this opinion

16  evidence harmless.  *See Molina*, 674 F.3d at 1115.

17  C.    Dr. Kristi Breen, Ph.D.

18      In a letter dated October 4, 2010, Dr. Breen indicated she had seen plaintiff on three

19  occasions since August 5, 2010.  (AR 1517; *see also* AR 1721-23 (treatment notes).)  Dr. Breen

20  stated:  "My biggest concern at this point is that her cognitive functioning is unreliable and can

21  vary greatly depending on mood and pain level."  (AR 1517.)   Her functioning remained

22  unpredictable:  "At times she will be completely unable to follow instructions.  She has consistent

23  trouble with task persistence and her inability to pay attention to details."  (*Id.*)  Plaintiff managed

REPORT AND RECOMMENDATION
PAGE - 18

1   by living with her mother, is able to drive and go to the grocery store, does not do any cleaning,

2   but did try and help her mother when she could, and does take care of her activities of daily living,

3   but needed physical assistance at times.  Dr. Breen opined plaintiff's problems "are most likely

4   due to a combination of her physical pain and mood instability[,]" found it unlikely plaintiff would

5   be able to return to work without substantial improvement in her functioning level, and that "[a]t

6   this point in time she appears to be a good candidate for disability."  (*Id*.)

7       The ALJ assigned the opinion of Dr. Breen little weight.  He took note of the fact Dr. Breen

8   had seen plaintiff on only three occasions at the time she rendered her opinion.  (AR 3339.)  He

9   found the observation regarding cognitive functioning inconsistent with Dr. Carla van Dam's July

10  2010 consultative examination, in which plaintiff was fully oriented, cognitively intact, and

11  demonstrated good memory.  (AR 1143-44.) He found the opinion regarding instructions, task

12  persistence, and attention to detail inconsistent with Dr. van Dam's examination, "which contained

13  objective psychological testing consistent with the claimant being cognitively intact."  (AR 3339.)

14  He found the indication plaintiff need physical assistance for the performance of activities of daily

15  living not supported by the medical record, noting findings on diagnostic imaging did not explain

16  her complaints and that physical examinations were unremarkable and inconsistent with her

17  complaints.

18      The ALJ assigned little weight to the opinion regarding a return to work and plaintiff's

19  candidacy for disability "because it is, like many others in this record, conclusory in that it provided

20  very little explanation of the evidence relied on in forming the opinion."  (*Id*.)  He further found

21  the opinion inconsistent with the clinical findings of other treatment providers and examiners.  For

22  example, in 2010, Dr. Frederick Silver found plaintiff alert and attentive, with organized and

23  logical thought processes, while Dr. van Dam found good attention and concentration skills.  (AR

REPORT AND RECOMMENDATION
PAGE - 19

1067, 1143.)  In 2012, Dr. Rachelle Langhoffer found no impairment in concentration, memory,

or abstraction, and Dr. Tasmyn Bowes found intact thought processes, orientation, perception, and

memory.  (AR 2003, 2027.)  Even the most recent mental status examination (MSE) from Dr.

Breen's office revealed "no impairment with memory or abstraction."  (AR 3339 (citing AR

1523).)[5]

The ALJ also described inconsistent mental status testing results, including the ability to

recall three words immediately and after a five-minute interval, repeat six digits forward and five

digits backward, recite her social security number forward and backward, spell "world" forward

and backward, complete nine subtractions of serial threes, and complete a three-step task.  (*Id.*

(citing AR 1140-46, 1998-2011, 2012-20).)  Plaintiff scored 28 out of 30 on the mini-MSE,

indicating no cognitive problems.  (*Id.* (citing AR 1998-2011).)  Her full scale IQ score on the

WAIS-IV indicated average intellectual functioning and, on the WMS-III, she scored in the 63rd

percentile in immediate memory and 77th percentile in general memory.  (*Id.* (citing 1140-46).)

"Moreover, even the claimant's self-reports reflected minimal symptoms of depression and

anxiety."  (*Id.* (citing AR 1068, 1778, 1780, 2000, 2160-2212).)

Plaintiff contends the ALJ simply repeated the same rationale he had in the 2014 decision.

The ALJ previously found Dr. Breen's opinion conclusory, with little explanation of the evidence

relied on, and identified inconsistency with the above-described clinical findings and mental status

testing results, and with plaintiff's self-reporting.  (AR 4235-26.)  In the 2017 decision, the ALJ

reiterated those findings, but also considered the limited treatment relationship at the time Dr.

Breen rendered her opinion, identified and described additional inconsistencies with findings in

---

[5] The ALJ attributed this MSE to Dr. Breen, but the record reveals it was conducted by a nurse practitioner from the same practice.  (*See* AR 1523, 1715-20.)

REPORT AND RECOMMENDATION
PAGE - 20

Dr. van Dam's examination, and discussed the absence of support in the objective evidence of record for the statement regarding daily activities. (AR 3339.) Plaintiff does not identify any specific error in the ALJ's reasoning, and the Court finds the reasons provided legally sufficient.[6] *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) (ALJ may consider the length of a treating relationship and frequency of treatment in determining the weight to assign to a medical opinion); *Tommasetti*, 533 F.3d at 1041 (inconsistency with the record properly considered); and *Batson*, 359 F.3d at 1195 (absence of support in objective evidence and contradiction with other statements and assessments properly considered; "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . or by objective medical findings[.]") (internal citations omitted).

Plaintiff also notes the ALJ's omission, in 2017, of mental impairments identified as severe in 2014, including personality disorder, major depressive disorder, bipolar disorder, and anxiety, and asserts an absence of any explanation for that change. She contends the omission of these mental impairments at step two "does not provide a legal basis for rejecting Dr. Breen's medical opinion of the limitations they cause[.]" (Dkt. 10 at 11 (citing SSR 96-8p (ALJ must consider limitations and restrictions imposed by all of a claimant's impairments, not only those found severe at step two).)

This argument also fails. The ALJ addressed all of plaintiff's mental impairments in the 2017 decision. At step two, he found plaintiff's medically determinable mental impairments of personality disorder, major depressive disorder/bipolar disorder, anxiety disorder, and opioid

---

[6] As noted above, this Court previously found the ALJ failed to provide legally sufficient reasons for rejecting challenged medical opinion evidence, but did not identify or discuss specific errors found. (AR 3465.)

REPORT AND RECOMMENDATION
PAGE - 21

1  dependence, considered singly and in combination, did not cause more than minimal limitation on

2  plaintiff's ability to perform basic mental work activities and were therefore non-severe.  (AR

3  3321.)  He noted both plaintiff and her roommate said she had no mental limitations in their

4  function reports, and cited to 2016 psychological evaluations by Dr. Robin Ballard and Dr. William

5  Wilkinson in support.  (*See* AR 3962-66 (Dr. Ballard found good control of mental health

6  symptoms with current medications and a positive response to psychotherapy, assessed the ability

7  to reason and understand, intact immediate and remote memory and mild impairment in recent

8  memory, very good ability to sustain concentration and persist in brief tasks of evaluation and

9  appearing sufficient in home environment, and good adaptation, and opined mental health

10  symptoms would not limit ability to attend work, complete work tasks, or interact with others);

11  AR 4462-66 (Dr. Wilkinson assessed no more than mild or moderate effect of mental health

12  symptoms on basic work activities and stated the primary reason for not working was physical:

13  "there are [mental health] issues, which are additive and cumulative in effect, but not the major

14  reason for work."))  The ALJ thereafter addressed plaintiff's mental impairments throughout the

15  decision.  For example, the ALJ noted, at step two, that plaintiff "did not really mention mental

16  health at the current hearing" when discussing functional impact (AR 3322-23); he discussed the

17  medical evidence and opinions associated with mental impairments at step four, including the

18  absence in the updated record of any mental health treatment other than medication and no mention

19  of psychological problems to her treating providers (AR 3330-32, 3338-42); and he again noted a

20  failure to mention mental health issues in a lay statement (AR 3342-43).

21       Plaintiff does not demonstrate error in the ALJ's consideration of her mental impairments

22  at step two or beyond.  *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("[Step two]

23  is not meant to identify the impairments that should be taken into account when determining the

REPORT AND RECOMMENDATION
PAGE - 22

1   RFC. In fact, '[i]n assessing RFC, the adjudicator must consider limitations and restrictions

2   imposed by all of an individual's impairments, even those that are not "severe."' The RFC therefore

3   should be exactly the same regardless of whether certain impairments are considered 'severe' or

4   not.") (quoting SSR 96-8p)  Nor does plaintiff support the contention the ALJ's failure to identify

5   additional severe mental impairments impacted the assessment of the opinion of Dr. Breen.  For

6   this reason, and for the reasons stated above, the ALJ's consideration of the medical opinion

7   evidence withstands scrutiny.

8                                       Symptom Testimony

9        Absent evidence of malingering, an ALJ must provide specific, clear, and convincing

10  reasons to reject a claimant's testimony.  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

11  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and

12  what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.  In considering the

13  intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the

14  entire case record, including the objective medical evidence; an individual's statements about the

15  intensity, persistence, and limiting effects of symptoms; statements and other information provided

16  by medical sources and other persons; and any other relevant evidence in the individual's case

17  record." SSR 16-3p.[7]

18       The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting

19  effects of her symptoms not entirely consistent with the medical evidence and other evidence in

20  the record. (AR 3332.)  Contrary to plaintiff's contentions, the ALJ provided specific, clear, and

21

22         [7] Effective March 28, 2016, the SSA eliminated the term "credibility" from its policy and clarified
    the evaluation of a claimant's subjective symptoms is not an examination of character.  SSR 16-3p.  The
23  Court continues to cite to relevant case law utilizing the term credibility.

REPORT AND RECOMMENDATION
PAGE - 23

1    convincing reasons in support of that conclusion.

2    A.    Medical Evidence

3        "While subjective pain testimony cannot be rejected on the sole ground that it is not fully

4    corroborated by objective medical evidence, the medical evidence is still a relevant factor in

5    determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*,

6    261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p.  An ALJ therefore properly considers whether the

7    medical evidence supports or is consistent with a claimant's allegations.  *Id.*; 20 C.F.R. §§

8    404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish capacity for basic work

9    activities only to the extent the alleged functional limitations and restrictions "can reasonably be

10   accepted as consistent with the objective medical evidence and other evidence.") An ALJ may

11   reject subjective testimony upon finding it contradicted by or inconsistent with the medical record.

12   *Carmickle*, 533 F.3d at 1161; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

13       Plaintiff suggests the ALJ improperly relied solely on an absence of objective support as

14   the basis for rejecting her testimony.  However, as only one among a number of reasons, the ALJ

15   properly considered not only the absence of corroborating objective evidence, but also the

16   inconsistent medical evidence.  He found plaintiff's allegations of hand, knee, and neck pain

17   inconsistent with the medical evidence, and no more than mild limitations in understanding,

18   remembering, or applying information, interacting with others, concentrating, persisting, or

19   maintaining pace, and in adapting or managing oneself.  (AR 3321-23, 3324-33.)  Plaintiff does

20   not demonstrate error in the ALJ's interpretation of the evidence, and her reliance on her numerous

21   medical appointments does not undermine the substantial evidence support for the ALJ's

22   conclusions.

23   / / /

REPORT AND RECOMMENDATION
PAGE - 24

B.     Activities

"[A]n ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."  *Bray*, 554 F.3d at 1227. Activities may undermine symptom testimony where they (1) contradict the claimant's testimony *or* (2) "meet the threshold for transferable work skills[.]"  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Plaintiff testified, at the first hearing, she could walk for only five-to-twenty minutes, stand for no more than ten minutes, and write for no more than five minutes, and, at the second hearing, that her pain had only gotten worse and she could barely use her hands.  (AR 3332.)  The ALJ considered plaintiff's ability to care for herself, prepare at least simple meals, do some household chores, go outside daily, use public transportation, shop, and socialize with family and friends, and identified inconsistency between her testimony as to generally limited daily activities and both her function reports and her multiple reports to examiners, "which overall appeared to be normal." (AR 3334.)  He found the activities of daily living consistent with the RFC assessed, inconsistent with the disabling levels of pain and mental health symptoms alleged, and suggesting a level of functioning greater than alleged in her application and testimony.  While plaintiff construes the evidence differently, the ALJ's interpretation of inconsistency is at least equally rational.

Also, while plaintiff testified she "mostly just laid around and relaxed" while on a 2011 vacation in Hawaii (AR 77, 116), the ALJ reasonably considered that plaintiff also swam with dolphins on that trip, as well as endured hours of air travel, standing in lines, and walking through airports.  (AR 3334.)  *See Tommasetti*, 533 F.3d at 1040 (ALJ properly inferred from evidence of claimant's travel that he was not as limited as alleged).  It may also be true that at least some of the activities identified by the ALJ do not require constant or repetitive use of her hands.  However,

REPORT AND RECOMMENDATION
PAGE - 25

the ALJ reasonably contrasted plaintiff's testimony she could not hold cards and was limited to driving ten miles due to hand pain, with objective medical evidence repeatedly showing hands and wrists without atrophy, full strength in her arms, wrists, and hands, and normal test results.

C.    Unemployment Benefits

The ALJ considered that plaintiff filed for and received unemployment benefits after the original alleged onset date. (AR 3334.) He stated:

> This typically requires one to certify that she is ready, willing, and able to work, which generally conflicts with filing for disability and alleging an earlier disability onset date. In fact, she indicated to her doctor that she was incapable of sustained work, yet she likely certified she was able to work in order to take unemployment compensation. As unemployment benefits were running out, she indicated that she just needed to get in shape to return back to productive work. After leaving her job because of her symptoms, it appeared she was more focused on getting disability than working with vocational rehabilitation. However, she reports 6/10 functionality to her pain manager, which is generally consistent with light work.

(*Id.* (citations to record omitted).)

Plaintiff contends her desire to work and find jobs, in the context of receiving unemployment benefits, demonstrates a good work ethic and should support the reliability of her testimony. She contends SSR 13-3p provides that the rejection of a claimant's symptom reporting based on the collection of unemployment benefits reflects bias by the ALJ.

An ALJ may consider a claimant's receipt of unemployment benefits. *Ghanim*, 763 F.3d at 1165 ("Continued receipt of unemployment benefits does cast doubt on a claim for disability, as it shows an applicant holds himself out as capable of working."); *Carmickle*, 533 F.3d at 1161-62 ("receipt of unemployment benefits can undermine a claimant's alleged inability to work full-time"). This Court has, moreover, already rejected plaintiff's assertion of bias and reliance on

REPORT AND RECOMMENDATION
PAGE - 26

SSR 13-3p:

> [SSR 13-1p] . . . gives as an example of an allegation of bias that the Appeals Council will refer to the Division of Quality Service that "the ALJ is biased against clients who receive workers compensation of unemployment benefits." [Plaintiff] makes no showing that the ALJ is biased against all recipients of unemployment benefits. And the ALJ did more than note [plaintiff's] receipt of benefits. Rather, the ALJ found that, while receipt of unemployment benefits does not preclude receipt of disability benefits, it was one factor among many that undermined [plaintiff's] credibility. The ALJ further found that the fact that [plaintiff] was aware of the duties required for the positions she applied for while receiving unemployment benefits showed that she subjectively believed she could perform those duties. And the ALJ found that a "concerning narrative" arose out of the termination of her unemployment benefits, when [plaintiff's] comments to her providers showed that it was the upcoming termination of her income stream that prompted her to seek work, not the requirement to seek work while on benefits. The mere fact that the ALJ considered [plaintiff's] receipt of unemployment benefits does not demonstrate disqualifying bias. [Plaintiff] has not shown general bias against recipients of unemployment benefits or bias against her in particular.

(AR 3467 (internal citations omitted).) Plaintiff now, as before, does not demonstrate error in relation to unemployment benefits.

D.    Conservative Treatment

An ALJ properly considers evidence associated with a claimant's treatment, 20 C.F.R. § 416.929(c)(3), SSR 96-7p and SSR 16-3p, including evidence of conservative treatment and favorable response to such treatment, *see Tommasetti*, 533 F.3d at 1039-40; *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). *See also Meanel*, 172 F.3d at 1114 (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). Plaintiff asserts that, whether or not she was only prescribed conservative treatment, it remains she

REPORT AND RECOMMENDATION
PAGE - 27

1   received a great deal of treatment and no doctor had doubted her experience of pain.  The Court

2   nonetheless finds the ALJ's consideration of the evidence of plaintiff's ongoing conservative

3   treatment, and her positive response to that treatment, reasonable and supported by substantial

4   evidence.  (*See* AR 3326-34.)

5   E.      Opioid Dependence

6           The ALJ noted that, beginning in 2012, plaintiff's "opioid dependence began to be noticed,

7   which is a motivation for exaggerating pain complaints in some cases."  (AR 3326.)  In February

8   2012, treating physician Dr. Ansari noted plaintiff "likely has opioid dependence" (AR 1778-79),

9   and, in September 2013, included opioid dependence as a diagnosis (AR 2162-64).  In June 2015,

10  plaintiff's primary care provider, Dr. Monica Wilhelm, noted plaintiff was on the maximum dose

11  of narcotics.  (AR 3697.)  The ALJ found this to harken back to the opioid dependence, and found

12  it "reasonable to question the level of pain alleged, especially in light of the overall minimal

13  objective findings, generally unremarkable clinical findings, and varying complaints."  (AR 3328.)

14  The ALJ further found plaintiff "seems to be the most limited by her body habitus and dependence

15  on opioids, which she seems to have chosen as the mechanism to manage her symptoms over

16  weight loss."  (AR 3333-34.)

17          Plaintiff argues the fact the ALJ "made a sly reference to opioid dependence, without even

18  mentioning it as an impairment at Step Two, is poor jurisprudence[,]" and that the Commissioner's

19  "attempt to ratchet this up into a reason to reject [her] testimony of her symptoms and limitations

20  lacks validity," and is an improper *post hoc* rationalization.  (Dkt. 15 at 8.)  Yet, the ALJ considered

21  plaintiff's opioid dependence as a medically determinable, but not severe impairment at step two.

22  (AR 3321.)   The ALJ also, as described above, considered evidence associated with opioid

23  dependence throughout the decision.  Plaintiff's arguments to the contrary lack merit, and the

REPORT AND RECOMMENDATION
PAGE - 28

Court finds no error in the ALJ's consideration of this evidence.  *See generally Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly considered evidence of exaggeration of pain to receive pain medication).

F.      Other Inconsistencies and Factors Considered

        In considering a claimant's symptom testimony, an ALJ may consider any other relevant evidence in the individual's case record, SSR 16-3p, or any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms, 20 C.F.R. §§ 404.1529(c)(3)(vii) and 416.929(c)(3)(vii).  Such considerations include, but are not limited to, inconsistencies in a claimant's testimony and inconsistent or non-existent reporting of symptoms, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

        The ALJ here properly considered inconsistencies in plaintiff's reporting and testimony.  Plaintiff "seemed to consistently report high pain levels to her chiropractors but the opposite to her pain manager." (AR 3334 (citations omitted).)  She testified to neck pain, but denied or minimized neck pain to providers. (AR 3329 (citations omitted).)  She typically alleged minimal mental health symptoms in treatment, but self-reported "9/10 when doing an examination for the Department of Social and Health Services." (*Id.* (*comparing* AR 2164-2212 as a whole, *with* AR 2183 in particular).)

        The ALJ's assessment also included other observations.  Plaintiff reported she did not complete a chemical dependency program in 2012 because it was too expensive, but took a vacation to Hawaii in 2011. (AR 3334.)  She at one point claimed to have forgotten having regular chiropractic treatment for ten years. (AR 3334-35.)  However, as plaintiff argues and the Commissioner concedes, the ALJ erred in considering evidence associated with plaintiff's income

1    reporting (*see* AR 3334), a factor not relevant to her allegation of any symptom.  Given the

2    numerous other reasons offered for discounting plaintiff's symptom testimony, this error is

3    properly deemed harmless.  *See Molina*, 674 F.3d at 1115.

4                                Lay Witness Testimony

5            Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

6    to work is competent evidence and cannot be disregarded without comment.  *Van Nguyen v.*

7    *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ can reject the testimony of lay witnesses

8    only upon giving reasons germane to the witness.  *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th

9    Cir. 1996).  Plaintiff argues the ALJ failed to provide germane reasons for rejecting the lay

10   testimony of her mother, sister, and a vocational counselor.  The Court disagrees.

11           The ALJ noted plaintiff's mother indicated plaintiff was unable to work due to hand pain,

12   but did not mention neck pain.  (AR 3342 (addressing AR 364-71, 418-25).)  While plaintiff's

13   mother stated plaintiff's condition necessitated reading from a Kindle, rather than a book, a Kindle,

14   like a book, requires the use of hands and fingers.  Plaintiff's mother also reported plaintiff's ability

15   to do other activities requiring use of hands and fingers, such as playing computer, board, and card

16   games, doing jigsaw and crossword puzzles, and filling out paperwork.  The ALJ found the two

17   function reports completed by plaintiff's mother to essentially repeat plaintiff's symptom

18   allegations, which the ALJ found inconsistent with the longitudinal record.  He stated:  "When

19   third party statements reflect subjective complaints, they are not objective evidence."  (*Id.*)

20           Plaintiff asserts the similarity between her allegations and the observations of her mother

21   merely shows she testified truthfully about her symptoms.  She denies the existence of any germane

22   reasons showing her mother lied, and argues their consistent reporting should be believed.  These

23   arguments do not show error.  The ALJ properly provided germane reasons by noting internal

REPORT AND RECOMMENDATION
PAGE - 30

inconsistency in the lay statements, and by finding the lay testimony, like plaintiff's similar testimony, inconsistent with the longitudinal record.  *See, e.g.*, *Lockwood v. Comm'r SSA*, No. 09-35546, 2010 U.S. App. LEXIS 17238 at *5-6 (9th Cir. Aug. 16, 2010) (finding ALJ's failure to address lay statement harmless given internal inconsistency); *Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.")  *See also Molina*, 674 F.3d at 1117-22 ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure to address the lay testimony may be deemed harmless).

The ALJ observed that plaintiff's sister indicated plaintiff was limited by pain, but could still care for pets, handle personal care with no problems, prepare simple meals, do laundry, wash dishes, go outside, use public transportation, shop in stores, manage finances, read, watch TV, play card and board games, pay attention, finish tasks, and follow instructions.  (AR 3342 (addressing AR 3652-59).)  He stated:  "Like most people, the claimant's daily activities are likely dictated by her amount of pain.  However, the medical evidence of record does not support debilitating pain given that her complaints are not consistent with the findings on diagnostic imaging, EMG/nerve conduction studies have varied from being negative to showing only some very mild ulnar neuropathy at the elbows, and physical examinations have been generally unremarkable."  (AR 3342-43.)  Plaintiff's sister "even admitted the claimant can lift 10 pounds."  (AR 3343.)  The ALJ

1   further stated: "There is some question of possible opioid dependence.  Nevertheless, she reports

2   to her pain manager that she is functional with pain medication, which conflicts with the sister's

3   allegation that the claimant's conditions are disabling."  (*Id.*)  Also, plaintiff's sister did not

4   mention any mental health issues.

5          Plaintiff accurately notes that a "lack of support" from the "'overall medical evidence'" is

6   not a germane reason for rejecting lay testimony.  *Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th

7   Cir. 2017).  However, while noting an absence of support in the medical evidence, the ALJ went

8   on to identify inconsistency with the medical record, which is a proper basis for rejecting lay

9   testimony.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  The ALJ also described

10  plaintiff's sister's reporting as to abilities and activities inconsistent with plaintiff's testimony as

11  to the extent of her limitations.  *Lewis*, 236 F.3d at 511-12 (germane reasons for discounting lay

12  testimony included inconsistency with medical evidence, evidence of claimant's activities, and

13  claimant's reports).  These reasons are germane to plaintiff's sister.

14         The ALJ also gave little weight to a June 2012 vocational assessment completed by

15  vocational consultant and trainer Maureen Blair.  (AR 3337 (addressing AR 2041-44).)  It appeared

16  that Blair relied heavily on plaintiff's subjective report of symptoms and limitations, which differ

17  from the objective medical evidence.  The ALJ also noted Blair's opinion does not qualify as a

18  medical opinion from an acceptable medical source.  (*Id.* (citing 20 C.F.R. §§ 404.1513(a),

19  416.913(a), and SSR 06-3p).)

20         The mere fact an individual is not an acceptable medical source does not obviate the need

21  to address significant, probative evidence.  The ALJ, in any event, provided a germane reason for

22  assigning the evidence from Blair little weight by noting Blair's heavy reliance on plaintiff's

23  subjective reporting of symptoms and limitations, which the ALJ found to differ from the objective

REPORT AND RECOMMENDATION
PAGE - 32

medical evidence of record.  Plaintiff does not explain how this reason was not germane to Blair or otherwise show the ALJ inappropriately rejected this evidence.

## **CONCLUSION**

For the reasons set forth above, this matter should be AFFIRMED.

## **DEADLINE FOR OBJECTIONS**

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 22, 2019**.

DATED this 6th day of February, 2019.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 33